Below is a Memorandum Decision of the Court.



_____
**Marc Barreca**
**U.S. Bankruptcy Court Judge**
(Dated as of Entered on Docket date above)

_____

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| In re: <br> Randy Paul Sanders, <br> Debtor. | Case No. 15-15243-MLB |
| Randy Paul Sanders, <br> Plaintiff, <br> vs. <br> AllianceOne Receivables Management, Inc. <br> Defendant. | Adversary No. 16-01204-MLB <br><br> **MEMORANDUM DECISION** |

*INTRODUCTION*

This matter came before me on motions for summary judgment by the Plaintiff, Randy Sanders ("**Sanders**" or the "**Plaintiff**"), and the Defendant, AllianceOne Receivables Management, Inc. ("**AllianceOne**" or the "**Defendant**") (Dkt. Nos. 68 and 73). Sanders filed this adversary proceeding after objecting to proofs of claim nos. 1, 2 and 4 (the "**Proofs of Claim**") filed by AllianceOne in the main bankruptcy case (the "**Bankruptcy Case**," Case No. 15-15243). The objections to claim are

MEMORANDUM DECISION - 1

consolidated into this proceeding. Additionally, Sanders seeks in his amended complaint (the "**Amended Complaint**") to determine the dischargeability and the amount owed on various legal financial obligations in the Proofs of Claim. (Am. Compl., Dkt. No. 57). Sanders asserts that AllianceOne violated the discharge injunction under 11 U.S.C. § 524(a) by attempting to collect debts, which were discharged in a prior bankruptcy. Sanders further asserts that AllianceOne's collection action violated the Washington Consumer Protection Act under RCW § 19.86 and the Washington Collection Agency Act under RCW § 19.16. AllianceOne seeks to dismiss the Amended Complaint with prejudice, asserting that the debts in the Proofs of Claim were nondischargeable pursuant to 11 U.S.C. § 523(a)(7).[1]

Following oral argument on May 23, 2018, I took the matter under advisement. Having considered the pleadings, evidence, and arguments of counsel, and otherwise being fully advised, I deny Sanders' motion for summary judgment and I grant AllianceOne's motion for summary judgment in part.

*JURISDICTION*

I have jurisdiction over the parties and the subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in the Western District of Washington pursuant to 28 U.S.C. § 1409.

*FACTS*

Prior to Sanders' current Chapter 13 bankruptcy, he filed a Chapter 7 petition (the "**Initial Bankruptcy Case**," Case No. 14-15724-KAO) and included AllianceOne in his Schedule F as a collection agent for Bellingham Municipal Court and Whatcom County. Sanders received his discharge in the Initial Bankruptcy Case on October 27, 2014. After AllianceOne engaged in post-petition collection activities, including garnishment of Sanders' wages, he filed the current Bankruptcy Case on August 31, 2015.

---

[1] AllianceOne's motion for summary judgment seeks only dismissal of the Amended Complaint. However, because the Amended Complaint also requests declaratory relief as to the amounts owed, AllianceOne's motion for summary judgment could not be granted in full even if otherwise completely meritorious. Sanders' motion for summary judgment appears to assert that all costs at issue and accrued interest are dischargeable but does not adequately state what relief is being requested.

MEMORANDUM DECISION - 2

The Proofs of Claim include amounts for various fines, costs and interest associated with sixteen criminal convictions, six entered in Whatcom County Superior Court (the "**Superior Court**") and ten entered in Bellingham Municipal Court (the "**Municipal Court**"). AllianceOne is the collection agent for each governmental entity. Additionally, there are at least eight judgments in Whatcom County District Court (the "**District Court**") as to which AllianceOne was previously the collection agent. AllianceOne asserts that it no longer has a contractual relationship with the District Court. However, AllianceOne did attempt to collect the District Court debts following discharge in the Initial Bankruptcy Case, sending a letter to Sanders dated January 9, 2015 (Dkt. No. 57-16). Neither party offered any proof of the District Court's underlying judgments and/or sentencing documents.

The Superior Court Debts

AllianceOne seeks to collect $22,709.38, consisting of fines, costs and interest derived from six criminal convictions in Superior Court. For each criminal conviction there is a sentencing order (the "**Sentencing Order**")[2], a document entitled "Assignment of Judgment and Collection Referral" (the "**Collection Referral**," Dec'l of Tim Bolden, Ex. 73-2)[3], and a summary of accounts taken from the Superior Court docket (the "**Accounting Summary**," Dkt. No. 69-7).

Each Sentencing Order imposes a different assortment of fines and costs, and each includes some variation of the following:

| Victim Fund Assessment | $500 |
|---|---|
| Criminal Filing Fee | $200 |
| Court Appointed Attorney Fee | $300-$600 |
| DNA Collection Fee | $100 |

---

[2] I will use the defined term to also reference the ten Municipal Court judgments.
[3] I will use the defined term to also reference a similar document assigning the Municipal Court and District Court debts entitled "Abstract of Judgment and Collection Referral."

MEMORANDUM DECISION - 3

**Below is a Memorandum Decision of the Court.**

| | |
|---|---|
| VUCSA Fine | $1000 |

Consistently, the Sentencing Orders include the following provisions that impose collection costs and interest:

> The defendant shall pay the cost of services to collect unpaid legal financial obligations, which include monitoring fees for a monthly time payment plan and/or collection agency fees if the account becomes delinquent. (RCW 36.18.190)
>
> The financial obligations imposed in this judgment shall bear interest from the date of Judgment until payment in full, at the rate applicable to civil judgments. RCW 10.82.090.

Dkt. No. 69-7. Additionally, all of the Sentencing Orders include a court finding that the defendant has the financial resources to pay all legal financial obligations. Although some, but not all, of the sentencing documents include a provision permitting a later court order that could impose restitution or other legal financial obligations, neither party has offered any proof of additional obligations being imposed by the Superior Court.

The Superior Court debts were referred to AllianceOne for collection on June 15, 2015. The referrals were memorialized in the Collection Referral signed by the county clerk. Each Collection Referral includes a total judgment amount, comprised of the following line items: Principal Penalty, Assigned Interest, Interest and Collection Fee. The amounts in the Collection Referral, specifically the Principal Penalty, do not directly match the Sentencing Order and it is unclear how either the county clerk or AllianceOne arrived at the exact numbers.

For each of the six Superior Court convictions there is an Accounting Summary providing for the following line items: Fine/Fee, Restitution, and Interest. Clouding the record further, the amounts provided on each Accounting Summary do not match the corresponding amounts on either the Sentencing Order or the Collection Referral. Additionally, some of the Accounting Summaries include restitution charges of $100 or $200, an amount not reflected in any of the Sentencing Orders.

MEMORANDUM DECISION - 4

One possible source of the discrepancies in the factual record is the "Offender Supervision Intake Fee" alluded to by AllianceOne at oral argument and provided for in the Declaration of Tim Bolden (Dkt. No. 73-2, Exs. K-P). The fee, amounting to $100, is cited under RCW 9.94A.780 and is not specifically imposed in the Sentencing Orders.

<u>The Municipal Court Debts</u>

AllianceOne seeks to collect $7,209.62, consisting of fines, costs and interest derived from ten criminal convictions in Municipal Court. There is a Sentencing Order and Collection Referral that corresponds to each conviction.

Each Sentencing Order imposes different fines and costs, but each include some variation of the following: Penalty/Fine, Warrant Fee, Attorney Fee, Conviction Fee, and a Book/Jail/Tour Fee. In contrast to the Superior Court Sentencing Orders, none of the Municipal Court Sentencing Orders expressly impose collection costs or interest.

Similarly to the Superior Court documentation, the Municipal Court Collection Referrals do not track the fines and costs imposed in the Sentencing Orders. More specifically, the line item "Principal Penalty" listed in each Collection Referral is $50-$160 higher than the amounts imposed in each corresponding Sentencing Order. The source of the discrepancy is unclear.

*ANALYSIS AND DISPOSITION*

**I. Applicable Law**

    <u>A. Summary Judgment</u>

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986). When a properly supported motion for summary judgment has been presented, the

adverse party "may not rely merely on allegations or denials in its own pleadings." *Id*. at 248. Rather, the non-moving party must set forth specific facts demonstrating the existence of a genuine issue for trial. *Id*. at 256.

"[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its merits." *Fair Hous. Council of Riverside Cnty, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal quotes and citations omitted). Thus, "the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Id*. (quoting Wright, et al., Federal Practice and Procedure § 2720, at 335-36 (3d ed. 1998)). If, however, cross-motions are before the court at the same time, the court is obliged to consider the evidence proffered by both sets of motions before ruling on either one. *Id*. at 1134.

B.  11 U.S.C. § 523(a)(7)

A debt is excepted from discharge under § 523(a)(7) "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss…" 11 U.S.C. § 523(a)(7). Essentially, there are three requirements for a debt to be excepted from discharge under §523(a)(7): (1) the debt must be for a fine, penalty, or forfeiture; (2) the debt must be payable to and for the benefit of a governmental unit[4]; and (3) the debt cannot constitute compensation for actual pecuniary loss.

Creditors seeking an exception to discharge under § 523(a) bear the burden of proof by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991). Ordinarily, exceptions to

---

[4] Although AllianceOne filed the Proofs of Claim, it is merely a collection agent and the debts are still owned by the respective governmental entities as provided in the collection contracts (Dkt. No. 57, Exs. A and B), the Collection Referrals and Washington State law. *See* RCW 36.18.190 and RCW 3.02.045. The parties do not raise the issue of whether the debts are "payable to and for the benefit of a governmental unit" even though AllianceOne is seeking to collect the debt. Because the debts are still owned by the governmental entities and because any collected funds would in part be remitted back to those entities, I conclude that this requirement has been met. *See e.g.*, *Stevens v. Commercial Collection Serv. (In re Stevens)*, 184 B.R. 584, 586 (Bankr. W.D. Wash. 1995) (determining that a debt is for the benefit of a governmental unit where the debt was assigned for collection purposes but the government retains ownership of the claim); *but cf. In re Dickerson*, 510 B.R. 289, 301 (Bankr. D. Idaho 2014) (construing "governmental unit" to exclude collection agents seeking to recover "amounts that would be paid to [the collection agent], not the [c]ounty").

MEMORANDUM DECISION - 6

discharge are strictly construed against the creditor and interpreted liberally to allow debtors a fresh start. *In re Bugna*, 33. F.3d 1054, 1059 (9th Cir. 1994). In contrast to the narrow interpretation applied to other subsections of § 523(a), the Supreme Court interpreted § 523(a)(7) to create "a broad exception for all penal sanctions, whether they be denominated fines, penalties, or forfeitures." *Kelly v. Robinson*, 479 U.S. 36, 51 (1986).

In *Kelly*, the Supreme Court concluded that restitution imposed in a criminal sentence was nondischargeable pursuant to § 523(a)(7). The Supreme Court explained:

> Our interpretation of the Code must reflect the basis for this judicial exception, a deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings. The right to formulate and enforce penal sanctions is an important aspect of the sovereignty retained by the States.

*Id*. at 47. In reaching its conclusion, the Supreme Court broadly held "that § 523(a)(7) preserves from discharge *any condition a state criminal court imposes as part of a criminal sentence*." *Id*. at 50 (emphasis added). Unperturbed by the statutory language requiring that the debt not be compensation for actual pecuniary loss, the *Kelly* court reasoned that criminal proceedings inherently focus on the State's interest in rehabilitation and punishment, and therefore "[t]hose interests are sufficient to place restitution orders within the meaning of § 523(a)(7)." *Id*. at 53.

A number of other courts have applied the rationale in *Kelly* to determine that other costs imposed as part of the criminal sentence are also excepted from discharge. *See e.g.*, *Lopez v. First Judicial Dist. of Pa. (In re Lopez)*, 579 Fed. Appx. 100, 103 (3rd Cir. 2014) (holding that every cost imposed as part of a state criminal sentence is nondischargeable subject only to the two qualifying phrases that the cost be "to and for the benefit of a governmental unit" and "not be compensation for actual pecuniary loss"); *Thompson v. Virginia (In re Thompson)*, 16 F.3d 576, 581 (4th Cir. 1994) (holding that costs of prosecution assessed under state law were nondischargeable even though the costs were not directly imposed in the criminal sentence); T*ennessee v. Hollis (In re Hollis)*, 810 F.2d 106, 108 (6th Cir. 1987)

**Below is a Memorandum Decision of the Court.**

(determining that costs imposed as a condition of probation were nondischargeable even though state law provided that costs were not considered part of the penalty). Notably, the *Thompson* court reasoned that costs resulting from a criminal conviction, unlike traditional pecuniary losses in a civil case, may in certain circumstances be satisfied by the performance of community service, and may result in criminal consequences for nonpayment. *Thompson*, 16 F.3d at 580.

The Ninth Circuit has considered whether costs awarded in attorney disciplinary proceedings are excepted from discharge under § 523(a)(7). *See State Bar of California v. Taggart (In re Taggart)*, 249 F.3d 987 (9th Cir. 2001); *State Bar of California v. Findley (In re Findley)*, 593 F.3d 1048 (9th Cir. 2010). In *Taggart*, the Ninth Circuit concluded that "costs" imposed on an attorney under California law were not "fines" or "penalties," and therefore were not excepted from discharge under § 523(a)(7). *Taggart*, 249 F.3d at 994. In reaching its conclusion, the Ninth Circuit analyzed the individual statutes imposing the fees, the legislative history, and the overall statutory scheme, leading the Ninth Circuit to conclude that the fees were not intended to be "fines" or "penalties," but rather compensation for "actual pecuniary loss." *Id*. At 994.[5]

In response to the *Taggart* decision, the legislature in California amended the statute, adding language that expressly labeled the costs imposed as "penalties, payable to and for the benefit of the State Bar of California… to promote rehabilitation and to protect the public." BPC § 6086.10(e). In *Findley*, the Ninth Circuit addressed the amended statute, determining that the added language undermined the *Taggart* analysis and concluding that the costs were nondischargeable pursuant to § 523(a)(7). *Findley*, 593 F.3d at 1054. After acknowledging that the amended statute still retained language of a compensatory nature, the *Findley* court nonetheless held the costs were nondischargeable and explained:

---

[5] Notably, the *Taggart* court acknowledged that other circuits have held that, under *Kelly*, costs imposed as part of a criminal sentence are nondischargeable and expressly reserved judgment on the issue. *Taggart*, 249 F.3d at 993 n.9.

MEMORANDUM DECISION - 8

> Further, disciplinary costs need not vary with the nature of the offense to be non-compensatory in nature. *See e.g.*, *Thompson v. Commonwealth of Va. (In re Thompson)*, 16 F.3d 576, 580 (4th Cir. 1994) (holding prosecution cost awards to be penal rather than non-compensatory despite their relationship to the length of a trial rather than the underlying offense).

*Id*. Although neither the opinions in *Taggart* nor *Findley* address the dischargeability of fines, costs and fees resulting from a criminal conviction, these decisions highlight the potential importance of interpreting the statutory scheme and the legislative background of the laws imposing financial obligations. Moreover, the opinions in *Taggart* and *Findley* indicate that even costs imposed, in part, to compensate a party for expenses may be excepted from discharge under § 523(a)(7), provided the statutes imposing those costs are intended to be penal in nature.

    C.  Washington State's Treatment of Legal Financial Obligations

Under Washington State law, a Legal Financial Obligation ("**LFO**") is

> a sum of money that is ordered by a superior court of the state of Washington for payment of restitution to a victim, statutorily imposed crime victims compensation fee, court costs, a county or interlocal drug fund, court-appointed attorneys' fees and costs of defense, fines, and any other legal financial obligation that is assessed as a result of a felony conviction.

RCW 9.94A.030(31).[6] To impose court costs on a criminal defendant, Washington courts must first determine the defendant's ability to pay. RCW 10.01.160; *State v. Blazina*, 182 Wn.2d 827, 839 (requiring the sentencing judge to make an individualized inquiry into the defendant's current and future ability to pay before the court imposes discretionary LFOs). Under the statutory scheme, a distinction is made between "fines" and "costs." *See State v. Clark*, 191 Wn. App. 369, 373-75, 362 P.3d 309 (2009) (only costs, and not fines, require an individualized determination of the defendant's ability to pay). In

---

[6] Although the statutory provisions governing LFOs define the term as applying only to superior court, it appears that the term and significant parts of the associated statutory scheme also apply to courts of limited jurisdiction, including both district courts and municipal courts. *See generally City of Richland v. Wakefield*, 186 Wn.2d 596 (2016) (discussing court procedures required for the district court to properly impose discretionary LFOs under RCW 10.01.160); *see also City of Seattle v. Fuller*, 177 Wn.2d 263 (2013) (analyzing the concurrent jurisdiction of superior courts and municipal courts over misdemeanors and holding that although the statutes imposing restitution specify only "superior court," they in effect apply to municipal courts).

MEMORANDUM DECISION - 9

contrast to discretionary LFOs, mandatory LFOs do not require an inquiry into the defendant's financial standing. Mandatory LFOs include victim restitution, victim assessments, DNA fees and criminal filing fees. *Id* at 373.

Regardless of whether an LFO is discretionary or mandatory, Washington State permits courts to employ various means to ensure payment, often with punitive consequences for the defendant beyond normal collection practices. For example, nonpayment of LFOs may result in courts imposing a suspended sentence or modifying the initial sentence. RCW 9.94B.040; RCW 9.94A.6333; RCW 3.50.340; RCW 9.92.060. Additionally, defendants who fail to pay fines or costs may be imprisoned for civil contempt. RCW 10.01.180; RCW 3.50.300; *Smith v. Whatcom County Dist. Court*, 147 Wn.2d 98, 105 (2002) ("The purpose of 'pay or stay' imprisonment is to coerce the defendant to pay the fine [and costs] imposed by the judgment."). If criminal defendants are imprisoned for failure to pay fines or costs, the amounts owed are reduced for each day of imprisonment. RCW 10.82.030; RCW 10.82.040. The amount of the reduction is determined by the county legislative authority and further determined by whether the criminal defendant performs labor during incarceration. *Id*.

**II. Application of Law to Facts**

  A. <u>Whatcom County Superior Court's Sentencing Orders</u>

  *1. Fines and Costs in the Sentencing Orders*

As discussed *infra*, the Supreme Court's decision in *Kelly* creates a broad exception to discharge for all financial obligations imposed by the sentencing judge. Pursuant to *Kelly*'s holding, it appears that all LFOs imposed in the Superior Court Sentencing Orders are nondischargeable in that § 523(a)(7) "preserves from discharge *any* condition a state court imposes as part of the criminal sentence." *Kelly*, 479 U.S. at 50 (emphasis added).

The Ninth Circuit does not appear to have clarified whether under *Kelly* all financial obligations imposed in a criminal judgment are inherently nondischargeable or whether courts must also analyze the statutory scheme under which the financial obligations arise. However, even if *Kelly* and its progeny

require courts to analyze the statutory scheme, the LFOs imposed in the Superior Court Sentencing Orders are nonetheless nondischargeable. The Washington State criminal statutory scheme permits courts to employ punitive repercussions on a criminal defendant following nonpayment of LFOs, including imprisonment, imposition of the suspended sentence, and modification of the original sentence. Furthermore, the legislative history pertaining to the collection of LFOs indicates an intent that the imposition of LFOs perform a penal purpose. During the 2011 amendments to the Washington statutes that allow the collection of LFOs, the legislature explained its general approach: "[T]he legislature believes that payment of legal financial obligations is an important part of taking personal responsibility for one's actions. The legislature therefore, supports the efforts of county clerks in taking collection action against those who do not make a good faith effort to pay." Laws of 2011, ch. 106, § 1.[7]

The fact that court costs imposed in the Superior Court Sentencing Orders do not function like ordinary civil debt is also indicative of a punitive purpose and leads to a conclusion that courts costs are not "compensation for pecuniary loss" within the meaning of § 523(a)(7). *See, e.g. Thompson,* 16 F.3d at 580 (concluding that court costs imposed in a criminal case "bear little resemblance to what normally constitute[s]… recovery for pecuniary loss in a civil case."). Unlike nonpayment of ordinary civil debt, nonpayment of LFOs in Washington may result in a criminal defendant being imprisoned, and in such cases, a reduction in the debt owed for each day incarcerated. RCW 10.82.030; RCW 10.82.040. Additionally, court costs may be modified to reduce the financial burden on the criminal defendant and to promote successful reintegration into society. *See State v. Blazina*, 182 Wn.2d at 835-36 (discussing the barriers to reentry caused by burdensome LFOs and the requirement that courts only impose LFOs in an amount that the defendant can afford). Each Superior Court Sentencing Order includes a finding by the sentencing judge that Sanders was able to afford the LFOs. Presumably, if the sentencing judge concluded that Sanders was unable to afford the discretionary LFOs, the court costs would have not been

---

[7] Although the cited amendments occurred after Sanders' convictions, the legislative intent is still generally relevant to understanding Washington State's basis for imposing LFOs.

MEMORANDUM DECISION - 11

imposed in accordance with RCW 10.01.160(3). This result, of course, disregards the actual pecuniary loss suffered by the court system and is markedly different from costs awarded in the civil context. For these reasons and given the expansive interpretation of § 523(a)(7) by *Kelly* and its progeny, I conclude that the LFOs imposed by the Superior Court serve a penal and rehabilitative purpose and are not compensatory within the meaning of § 523(a)(7).

Therefore, I conclude that all financial obligations imposed in the Superior Court Sentencing Orders – including the Victim Asessment, the Criminal Filing Fee, the DNA Collection Fee, Court Appointed Attorney Fees, Collection Costs and Interest – are nondischargeable under § 523(a)(7).

*2. Restitution*

There appears to be a factual dispute as to whether AllianceOne is seeking to collect any debts for restitution. The dispute originates in the Superior Court Accounting Summaries, some of which appear to impose charges for restitution. It is unclear why the Accounting Summaries reflect these charges while the Sentencing Orders do not. If restitution was in fact charged to Sanders, by either later court order or under a statutory basis, AllianceOne has not provided such information to me, and therefore has not carried its burden on summary judgment of proving those charges are either owed by Sanders or nondischargeable.

*3. Offender Supervision Intake Fees*

Similarly, it remains unclear to what extent the Proofs of Claim include charges for Offender Supervision Intake Fees, which AllianceOne cites under RCW 9.94A.780. The statute provides:

> (7) If a county clerk assumes responsibility for collection of unpaid legal financial obligations under RCW 9.94A.760, or under any agreement with the department under that section, whether before or after the completion of any period of community custody, the clerk may impose a monthly or annual assessment for the cost of collections. The amount of the assessment shall not exceed the actual cost of collections. The county clerk may exempt or defer payment of all or part of the assessment based upon any of the factors listed in subsection (1) of this section. *The offender shall pay the assessment under this subsection to the county clerk who shall apply it to the cost of collecting legal financial obligations under RCW 9.94A.760*.

RCW 9.94A.780 (emphasis added). Although Offender Supervision Intake Fees are imposed by the county clerk and not the court, the purpose of such fees is to pass the cost of collecting LFOs on the criminal defendant. Because each Superior Court Sentencing Order provides that "[t]he defendant shall pay the cost of services to collect unpaid legal financial obligations, which include monitoring fees for a monthly time payment plan and/or collection agency fees," I conclude that all fees imposed under RCW 9.94A.780(7) were imposed by the sentencing judge as part of the criminal sentence. Therefore, under the *Kelly* framework, any charges incurred by RCW 9.94A.780 as to the Superior Court debts are nondischargeable pursuant to § 523(a)(7).

### B. Bellingham Municipal Court's Sentencing Orders

*1. Fines and Costs in the Sentencing Orders*

Like the Superior Court Sentencing Orders, the Municipal Court Sentencing Orders impose various costs on Sanders, some of which appear to be mandatory LFOs and others discretionary LFOs. For the same reasons I conclude that the LFOs imposed under the Superior Court Sentencing Orders are nondischargeable, I also conclude that all LFOs imposed by the Municipal Court Sentencing Orders are nondischargeable, including the Penalty/Fine, Warrant Fee, Attorney Fee, Conviction Fee, and Book/Jail/Tour Fee.

*2. Interest*

Interest charged on Sanders' Municipal Court debt is statutorily imposed and not explicitly imposed by the sentencing judge.[8] Unlike other debts imposed at sentencing, it is unclear whether municipal courts may take punitive action against criminal defendants for nonpayment of statutorily

---

[8] In general, interest on prior nondischargeable debts is also nondischargeable. *See Oregon v. Egbo (In re Egbo)*, 551 B.R. 869, 874-75 (D. Or. 2016). Whether this general rule applies to interest on principal amounts that are otherwise nondischargeable under § 523(a)(7) is an interesting question, given the traditional purpose of interest to compensate for the time value of money and § 523(a)(7)'s qualifying phrase that the debt not be "compensation for pecuniary loss." However, here, given my determination that interest serves a punitive purpose, I will not address the issue.

imposed interest. However, in *State v. Cunningham*, 116 Wn. App. 946, 69 P.3d 358 (2003), the state appellate court found that the interest accruing on LFOs was penal in nature and nondischargeable under § 523(a)(7). *Cunningham*, 116 Wn. App. at 955. The court reasoned that the imposition of interest was part of Washington's greater criminal statutory scheme because interest accrued automatically upon a criminal conviction. *Id*. at 954. It did not matter to the *Cunningham* court that interest was statutorily imposed and not directly ordered by the trial judge. *Id*. at 955. Significantly, the *Cunningham* decision provides a thorough analysis of the legislative purpose for imposing interest. The Washington Court of Appeals specifically found that the purpose of imposing interest on LFO principal balances is penal and non-compensatory within the meaning of § 523(a)(7).

The only notable difference between the statute at issue in *Cunningham* and the statute at issue here is the date on which the interest begins to accrue. In *Cunningham*, which analyzed a statute applying only to superior courts, interest automatically accrued from the date of judgment. Conversely, the statute at issue here, RCW 35.20.220, applies only to municipal courts, and imposes interest on the date the debt is assigned to collection. Despite the difference, the *Cunningham* analysis applies to the present case because interest imposed on municipal court debts, like interest imposed on superior court debts, automatically accrues and is a statutory result of a criminal conviction. The fact that the triggering event differs is irrelevant to the analysis. I agree with the *Cunningham* analysis and therefore I conclude that the interest imposed on the Municipal Court LFOs are nondischargeable pursuant to § 523(a)(7).

*3. Collection Fees*

AllianceOne seeks to recover collection fees assessed under RCW 3.02.045, which provides that "[c]ourts of limited jurisdiction may use collection agencies" and that "[t]he court *may* assess as court costs the moneys paid for remuneration for services." RCW 3.02.045 (emphasis added). Based on a plain reading of the statute, it appears to grant municipal courts the discretion to impose collection costs as a "court cost" owed by the criminal defendant. However, as the Sentencing Orders do not reflect any such

MEMORANDUM DECISION - 14

imposition, I am unable to determine how those charges were in fact imposed on Sanders and whether those charges would in turn be nondischargeable.

Although AllianceOne has provided Collection Referrals for each Municipal Court conviction and the Collection Referrals do provide for collection costs under RCW 3.02.045, AllianceOne does not present any evidence that these documents should be construed as orders imposed by the sentencing court and not merely potentially inaccurate summaries of outstanding debt by the court clerk. AllianceOne therefore has not met its burden, on summary judgment, of proving the costs under RCW 3.02.045 were imposed by the sentencing court as part of the punishment or that they should otherwise be nondischargeable under the statutory scheme.

### C.  Whatcom County District Court's Sentencing Orders

AllianceOne asserts that because it did not file a proof of claim seeking recovery of District Court debts and because it no longer has authorization to collect District Court debts, Sanders' erred by bringing District Court related claims against it.  However, this argument fails to address the alleged collection activity that occurred following the discharge in the Initial Bankruptcy Case.  Neither party provided documentation of the judgments rendered in District Court, therefore I am unable to determine whether those debts were in fact excepted from discharge.  Furthermore, it appears from the offers of proof submitted by Sanders that AllianceOne did engage in some collection activity by sending a collection letter post-discharge. However, even if AllianceOne did violate the discharge injunction, it is unclear what damages, if any, Sanders' would be entitled.  Since I am unable to determine the dischargeability of the District Court debts, I deny AllianceOne's request, on summary judgment, to dismiss those claims.[9]

---

[9] Although AllianceOne has the burden of proof in the determination of dischargeability, I note that Sanders' has the burden to establish a violation of the discharge injunction. *See Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d 1193, 1205 n.7 (9th Cir. 2008), *aff'd*, 130 S. Ct. 1367, 176 L. Ed. 2d 158 (2010) (the party seeking contempt sanctions for violation of the discharge injunction has the burden of proving, by clear and convincing evidence, that the sanctions are justified).  To prove a sanctionable violation, Sanders must prove that AllianceOne (1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction. *Id*.

**Below is a Memorandum Decision of the Court.**

*CONCLUSION*

In sum, I deny Sanders' motion for summary judgment and grant AllianceOne's motion for summary judgment in part. AllianceOne is granted summary judgment only to the extent that I have determined the following items to be nondischargeable:

<u>Superior Court LFOs</u>

1) Victim Assessment ("PCV")

2) Criminal Filing Fee ("FRC")

3) DNA Collection Fee ("DNA")

4) Court Appointed Attorney Fee ("PUB")

5) VUCSA Fine ("LDI")

6) Collection Costs under RCW 36.18.190

7) Interest under RCW 10.82.090

8) Offender Supervision Intake Fees under RCW 9.94A.780

<u>Municipal Court LFOs</u>

1) Penalty/Fine

2) Warrant Fee

3) Attorney Fee

4) Conviction Fee

5) Book/Jail/Tour Fee

6) Interest under RCW 35.20.220

There still exists an issue of material fact as to the accuracy of AllianceOne's accounting due to the discrepancies between the Sentencing Orders, the Collection Referrals, the Accounting Summaries and the Proofs of Claim. Notwithstanding that AllianceOne has shown that much of the debt imposed

by the Sentencing Orders is nondischargeable, it still bears the ultimate burden of persuasion in proving the accuracy of the amounts claimed. *See Lundell v. Anchor Constr. Specialists, Inc. (In re Lundell)*, 223 F.3d 1035, 1039 (9th Cir. 2000). Similarly, for the few remaining items in which I could not determine dischargeability - including both the Municipal Court collection costs and the District Court debts - there remains the possibility that AllianceOne violated the discharge injunction following the Initial Bankruptcy Case. Therefore, I am unable to dismiss, on summary judgment, Sanders' claim under the Washington Consumer Protection Act under RCW § 19.86 and the Washington Collection Agency Act under RCW § 19.16.[10] Given the existence of an overall factual dispute as to the accuracy of AllianceOne's accounting and given the few remaining charges where I could not determine dischargeability, a genuine dispute of material fact exists for trial.

Counsel for AllianceOne should submit appropriate forms of order (a) granting its summary judgment in part, and (b) denying the Sanders' motion for summary judgment.

/ / / End of Memorandum Decision / / /

---

[10] I am not addressing the applicability of RCW § 19.86 or RCW § 19.16 to collection of LFOs by collection agencies as it was not briefed in connection with these motions for summary judgment.